<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| INTERLINK GROUP CORPORATION USA, INC., | : | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | : | Civil Case No. 12-6179 (FSH) (PS) |
| v. | : | **<u>OPINION & ORDER</u>** |
| AMERICAN TRADE AND FINANCIAL CORPORATION et al, | : | Date: April 25, 2013 |
| Defendants. | : | |

This matter comes before the Court upon Interlink Group Corporation's ("Interlink") Motion for a Preliminary Injunction [Docket No. 3] and Motion to Dismiss Count 5 of the Counterclaim [Docket No. 19]. The Court has reviewed the submissions of the parties and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.

**I.     Background**

In approximately 2005, American Trade Financial Corporation ("ATFC") and its sole employee and owner, Anataloi Timokhine ("Defendants"), began a business relationship with Interlink. The parties' business relationship concerned, <u>inter alia</u>, broiler hatching egg shipments from suppliers located in the United States to purchasers located in various countries from the former Soviet Union. (Compl. at ¶ 6). In 2007, Defendants drafted an agreement between Interlink and an American broiler hatching egg supplier called Morris Hatchery, Inc. ("Morris Hatchery"). (<u>Id.</u> at ¶¶ 17-19). Morris Hatchery and Interlink eventually entered into litigation regarding that agreement, which ended in a verdict in Interlink's favor for $1,925,000 in May 2012. (<u>Id.</u> at ¶¶ 23-29).

1

While this litigation was ongoing, the business relationship between Interlink and Defendants deteriorated. The parties dispute the reason for this deterioration. Interlink contends that it was the result of Defendants' conduct regarding the agreement with Morris Hatchery. (Id. at 28). Defendants state that the two companies had an agreement to split the profits from their egg shipping business equally. However, by 2012 Interlink and its president, Alexander Karpman, allegedly ceased splitting the profits. (Opp. to Mot. for Preliminary Inj. at 5). Defendants also claim that the two companies had entered into a separate agreement to purchase 3,000 tons of coal in Poland. Timokhine has certified that "Karpman inexplicably and without substantiation reported to me that 2000 of the 3000 tons of coal, which we together purchased for sale in Poland 'washed into a river' and that there were no proceeds – insurance or otherwise – from that purportedly lost coal." (Id., Aff. Anatoli Timokhine at ¶19). It is undisputed that the parties ceased conducting business together in March of 2012. (Compl. at ¶ 28; Timokhine Aff. at ¶ 20).

In June of 2012, Defendants contacted the Keith Smith Company, Inc., regarding establishing an agreement to sell broiler hatching eggs to a company called White Bird. (Id. at ¶ 30). Defendants subsequently entered into a non-competition, non-disclosure and non-solicitation agreement (the "NCA") with Interlink. (Id. at ¶ 34). According to the NCA, Defendants received $780,504.75 as consideration. (Id., Ex. B. at 2-3). On September 21, 2012, counsel for Defendants wrote Interlink a letter stating that the NCA was "fraudulently procured and is substantially unconscionable and unenforceable, and is void ab initio." (Id. at ¶36).

Interlink then filed a complaint in this Court alleging four causes of action, including breach of contract, breach of fiduciary duties, and tortious interference with business relations. Defendants have filed a counterclaim alleging breach of contract, unjust enrichment, promissory

estoppel, and tortious interference with business relations. Defendants also seek a declaratory judgment that the NCA is unenforceable.

## II. The Motion for a Preliminary Injunction

Interlink has filed a motion for a preliminary injunction seeking to enforce the terms of the NCA.

### a. Standard of Review

The Supreme Court has stated that "[a] preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (internal citations omitted). In the Third Circuit, a party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). This Circuit has emphasized the importance of demonstrating a likelihood of success on the merits and irreparable harm, stating that "[w]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) (internal quotation omitted).

### b. Discussion

The burden of showing irreparable injury rests with Interlink. Oburn v. Shapp, 521 F.2d 142, 150 (3d Cir. 1975). The Third Circuit has explained that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). A preliminary injunction may issue to enforce a non-competition agreement. Nat'l Reprographics, Inc. v. Strom, 621 F. Supp. 2d

204, 221-30 (D.N.J. 2009). In order to issue a preliminary injunction, "more than a risk of irreparable harm must be demonstrated." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 358 (3d Cir. 1980). In Continental Group, the Third Circuit noted that with regard to noncompetition and nondisclosure agreements:

> Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do.
>
> [Id. (internal punctuation and citation omitted)].

Interlink argues that because Defendants solicited White Bird, which it alleges to be one of its customers, before the NCA was signed, there is a "threatened injury." (Moving Br. at 5). It argues that Defendants "have continued and continue to work in the broiler hatching egg export market." Id. Interlink explains that because Defendants "believe the [NCA] is invalid, Interlink has no assurance that Defendants will not compete in the egg shipping industry. (Reply Br. at 3). In response, Defendants state that Interlink has not provided evidence that they have breached the NCA. (Opp'n Br. at 10).

The Court finds that Interlink is seeking a preliminary injunction "to allay [its] fears and apprehensions." Continental Group, Inc., 614 F.2d at 358. A preliminary injunction cannot issue on those grounds. Interlink has presented no persuasive evidence that Defendants have or will breach the NCA. It has not met its burden of showing irreparable harm. Such a showing is a prerequisite for a preliminary injunction. Hoxworth, 903 F.2d at 197.[1]

---

[1] Defendants also argue that a preliminary injunction should not issue because Interlink is unlikely to succeed on the merits. They claim that the NCA will fail for lack of consideration and is unreasonably broad. (Opp'n Br. at 12-14). Interlink responds that the Court should not consider Defendants' narrative of events under the parol evidence rule, and that the NCA is enforceable, as it imposes no undue hardship upon Defendants. (Reply Br. at 3-5). Because the motion for a preliminary injunction can be resolved upon other grounds, the Court will not reach these questions. Additionally, Defendants have filed a letter addressing the parol evidence rule,

**III.    The Motion to Dismiss**

Interlink has also filed a motion to dismiss Count 5 of Defendants' counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  In Count 5, Defendants seek a declaratory judgment that the NCA is "unenforceable and is a nullity." (Answer at ¶ 52).   In support of this claim, Defendants allege that the NCA is overly broad and unreasonable. (Id. at ¶ 46).  They also allege that there was a lack of consideration, as Timokhine was already entitled to the $780,504.76 as his portion of the Florida lawsuit. (Id. at ¶ 48).  They finally allege that Timokhine executed the NCA under duress, based on his need to pay the bills for his wife's medical treatment. (Id. at ¶¶ 49-51).

    a.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under Iqbal, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the

---

which they request the Court to accept as a sur-reply.  For the same reason, leave to file a sur-reply is denied.

complaint are sufficient to show that the plaintiff has a plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (internal quotations and alterations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

    b. Discussion

Interlink argues that because Defendants do not allege fraud in the inducement, they cannot present their version of events that led to the NCA under the parol evidence rule. (Moving Br. at 4-8). Interlink also argues that Defendants have not stated sufficient allegations to show duress. (Id. at 8-10). Finally, Interlink argues that the NCA is enforceable, and even if the NCA's terms are overbroad, the only remedy available to Defendants is to seek modification of those terms. (Id. at 10-12).

These various claims raised by Interlink all address the merits of Defendants' claim for declaratory judgment, as distinguished from the question properly addressed in a Rule 12(b)(6) motion to dismiss, which looks at the legal sufficiency of the allegations of the Complaint. Interlink may raise these arguments when this litigation reaches the merits stage. However, the Court, in its discretion, declines to exercise declaratory judgment jurisdiction over Count 5. Whether to grant or refuse declaratory relief is a matter of judicial discretion. Samuel Goldwyn

<u>v. UA Corp.</u>, 113 F.2d 703, 709 (3d Cir. 1940).  Here, the legal rights Defendants seek to clarify in Count 5 will be fully addressed in the other claims and defenses in this case.

**IT IS** on this 25th day of April, 2013,

**ORDERED** that Interlink's motion for a preliminary injunction [Docket No. 3] is **DENIED**; and

**IT IS FURTHER ORDERED** that Interlink's motion to dismiss Count 5 of the Counterclaim [Docket No. 19] is **DENIED**, but the Court declines to exercise its jurisdiction over that Count.  Count 5 is hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that the parties will be referred to mediation. An appropriate Order will follow.  Discovery will not be stayed while mediation is ongoing.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J