UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| INTERLINK GROUP CORPORATION USA, INC. | : | Civil Action No. 12-6179 (JBC) |
| Plaintiff/Counterclaim Defendant | : | |
| v. | : | |
| AMERICAN TRADE AND FINANCIAL CORPORATION and ANATOLI TIMOKHINE | : | |
| | : | OPINION AND ORDER |
| Defendants/Counterclaim Plaintiffs/ Third-Party Defendants | : | |
| | : | |
| v. | : | |
| ALEXANDER KARPMAN | : | |
| Third Party Defendant | : | |
| | : | |

**NOT FOR PUBLICATION**

In advance of trial, the parties have filed three in limine motions with the Court which are titled as follows:  1) Plaintiff's Motion to Preclude the Proffered Testimony of Anatoli Timokhine, Docket No. 63; 2) Plaintiff's and Third-Party Defendant's Motion In Limine to Preclude the Proffered Testimony of Their Attorney Alan L. Frank, Esq,, Docket No. 86; and 3) Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs American Trade and Financial Corporation and Anatoli Timokhine's Motion to Preclude Plaintiff's Proffered Witnesses Attorney Eugene Khavinson and Bud West, Docket No. 85.  For the reasons set forth infra, the

Court will grant the first motion in part and will grant the second and third motions in their entirety.

BACKGROUND

The Court will not fully restate the facts underlying this case, which are set forth at length in its Opinion and Order relating to the parties' summary judgment motions. For purposes of these motions, suffice it to say that each of the parties is seeking to bar the testimony of witnesses for the other on a variety of grounds.   First, Plaintiff asks the Court to bar at trial the proposed expert testimony of Anatoli Timokhine, a party to this matter, on the grounds that his opinions are not reliable, are based upon subjective and conclusory methods that cannot be tested, and do not fit the evidence that has been developed during discovery. Second, the Plaintiff and the Third-Party Defendants ask the Court to bar at trial the testimony of their attorney, Alan L. Frank, Esq., on the grounds that his testimony would not be probative, that it would be unnecessarily cumulative, and that it would be prejudicial. Third, the Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs ask the Court to bar at trial the testimony of attorney Eugene Khavinson and Bud West on the grounds, inter alia, that they were not identified as potential witnesses prior to the end of discovery and that their testimony would be irrelevant and/or unnecessarily cumulative. The Court will analyze each of these motions in turn.

ANALYSIS

Expert Testimony of Anatoli Timokhine. Anatoli Timokhine, a party to this litigation, is the president of American Trade and Financial Corporation (ATFC). Docket No. 80 (Joint Final Pretrial Order), at 4. ATFC is also a party to this litigation. Timokhine graduated from Moscow Finance Institute with a degree in international finance and business. Id. at 5. After graduating,

2

Timokhine was employed at various large international banks, and gained extensive experience in international trade and project financing.  Id.  In 1991, Timokhine came to the United States and served as Senior Vice President in an international finance company.  Id.  After working at the international finance company, Timokhine worked at different financial institutions.  In 1999, Timokhine founded ATFC.  Id.

In 2004, Plaintiff Interlink Group Corporation USA, Inc. (Interlink), through Alexander Karpman, a party to this action, and ATFC, through Timokhine, began a business relationship. Starting in 2005, the parties worked together to export broiler hatching eggs to former countries of the Soviet Union (the CIS countries).  Id.  At the beginning of the business relationship, the parties agreed to split the profits of that business equally. The parties further agreed that Timokhine would have the title of Chief Financial Officer of Interlink and that he would receive no compensation for that title. Id.  Additionally, the parties agreed that all contracts related to the transportation of broiler hatching eggs to customers into the CIS countries were to be executed between Interlink and the purchaser located in the CIS countries.  Id.

Beginning in 2007, Interlink purchased broiler hatching eggs from Keith Smith Company, Inc. ("Keith Smith").  Id.  at 6-7.  Thereafter, on August 19, 2009 Interlink and Keith Smith entered into an exclusivity agreement for the purchase of broiler hatching eggs.  Id. at 7.  Keith Smith maintained this exclusivity agreement provided Interlink purchase a minimum volume of broiler hatching eggs per year.  Id.

On March 31, 2012, Interlink, ATFC, and their principals ceased their professional relationship in connection with the egg shipping business.  Id.  Shortly thereafter, on April 25, 2012, ATFC entered into a new consulting agreement with Keith Smith. Id.  ATFC claims that, pursuant to that agreement, ATFC arranged for the execution of a contract between Keith Smith and an outfit known as "White Bird" for the shipment of 5,000,000 eggs.  See Docket No. 63, Document 1, Exhibit F (Timokhine Report).  ATFC further claims that Keith Smith was told that White Bird

3

intended to purchase an additional 70,000,000 to 80,000,000 eggs in 2013.  Id.   On or about August 3, 2012, however, Timokhine executed an agreement – Timokhine claims under duress -- on behalf of himself and ATFC not to compete with Interlink.  Docket No. 80 (Joint Final Pretrial Order), at 17.  Thereafter, on or about September 5, 2012, Interlink and Keith Smith entered into a new exclusivity agreement, id. at 7, and any deals between Keith Smith and White Bird apparently fell through.

AFTC and Timokhine currently offer the testimony of Timokine as expert testimony in support of their claims that Interlink and Karpman tortiously interfered in their contractual relationship with Keith Smith.  Specifically, Timokhine's purported expert report recites the alleged facts underlying the consummation and termination of ATFC's consulting agreement with Keith Smith, his own professional background, his past experience regarding customary profit margins on the sale of eggs, and his expectations based upon that past experience regarding profit margins that might be expected in the sale of eggs by Keith Smith to White Bird.  See Docket No. 63, Document 1, Exhibit F (Timokhine Report).

As noted, Interlink and Karpman object to Timokhine testifying as an expert at trial.  Specifically, Interlink and Karpman contend that Timokhine's proposed expert testimony violates the standards for admissible expert testimony established in Daubert v. Merrell Dow Pharaceuticals, Inc., 509 U.S. 579, 592-93 (1993) and Federal Rule of Civil Procedure 702 insofar as Timokhine's opinions are not reliable, are based upon subjective conclusory methods that cannot be tested, and do not fit the evidence that has been developed during discovery.

The Court agrees that its determination regarding whether or not Timokhine should be permitted to testify as an expert is governed by the standards set forth in the United States Supreme Court's Daubert decision and in Rule 702.  The Court would further note that just because a proposed expert witness is a party to the litigation is not, by itself, reason to disqualify the proposed expert from testifying.  Scheidt v. Klein, 956 F.2d 963, 968 & n.4 (10th Cir. 1992) (and citations therein).  It

4

is clear, however, that a person must possess "specialized expertise" in order to qualify as an expert. Schneider ex rel. Schneider v Fried, 320 F.3d 396, 404 (3d Cir. 2003). Such specialized expertise must include sufficient knowledge, training, and/or skills so that the expert's testimony will assist the trier of fact. Id. The Third Circuit Court of Appeals has made clear that "at a minimum, a proffered expert witness … must possess skill or knowledge greater than the average layman." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998).

Here, it is not immediately apparent that Timokine possesses the type of specialized expertise that a Court would commonly require to qualify him as an expert witness. When describing his expertise, rather than outlining any independent training, education, or experience he has in the business of selling, importing, and/or exporting eggs, Timokhine merely recites his personal dealings in the egg business which constitute the subject of this lawsuit – namely, his dealings with Interlink, ATFC, and Keith Smith. Without more, this hardly qualifies him generally as an expert in the egg business such that he might render an independent expert opinion in any case involving a dispute over egg pricing, and the Court therefore declines to qualify him as an expert in this case. See In Re Unisys Savings Plan Litigation, 173 F.3d 145, 163 (3d Cir. 1999) (decision whether or not to permit witness to testify as an expert within discretion of trial court).

The fact that the Court will not qualify Timokhine as an expert, however, does not end the analysis. Although Timokhine does not qualify as an expert in this matter, he does not need to qualify as an expert in order to testify in the manner he proposes. Simply stated, Timokhine is not offering expert testimony in his report. Rather, he is offering his recollection of the facts of this case as he experienced them and his fair expectations and assumptions of what would happen based upon those facts. Federal courts recognize that an individual need not be qualified as an expert in order to testify about, and offer pertinent opinions relative to, challenged activities to which he was a direct witness. United States v. Graham, 643 F.3d 885, 898 (11th Cir. 2011). In such instances, the individual may testify as to the facts and may offer pertinent opinion testimony pursuant to Federal

Rule of Civil Procedure 701.   See Tampa Bay Shipbuilding v. Cedar Shipping Company, 320 F.3d 1213, 1222 (11ᵗʰ Cir. 2003).

Here, Timokhine proposes to testify regarding his knowledge of the facts underlying the consummation and termination of ATFC's consulting agreement with Keith Smith, his own professional background, his past experience regarding customary profit margins on the sale of eggs, and his expectations based upon that past experience regarding profit margins that might be expected in the sale of eggs by Keith Smith to White Bird.   See Docket No. 63, Document 1, Exhibit F (Timokhine Report).   Clearly, most of this testimony relates to relevant facts of which Timokhine professes to have knowledge, and such testimony is obviously appropriate coming from a lay witness.   To the extent Timokhine's testimony concerns his expectations regarding egg sales and prices relative to Keith Smith's deals with White Bird, and perhaps arguably approaches a subject about which an expert might testify, that testimony is fairly based on his past experiences in the business involving all of the actors in this case and, to the extent it constitutes opinion testimony, it is appropriate under Federal Rule of Civil Procedure 701.   Indeed, such testimony would be 1) rationally based on Timokine's perception, 2) helpful to understanding his testimony and to determining facts in issue, and 3) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.  See Fed. R. Civ. P. 701.

Accordingly, Timokhine will be allowed to testify regarding the material in his report in his capacity as a lay witness.   Interlink and Karpman will, of course, have the opportunity to challenge his testimony through cross examination and the introduction of testimony from other witnesses and other evidence, and in the end the Court will determine the appropriate weight to be given his testimony.

Witness Alan L. Frank, Esq.   As noted, supra, Interlink and ATFC began a business relationship in 2004.   Docket No. 80 (Joint Final Pretrial Order), at 5.   During that relationship, Interlink retained the services of Attorney Alan L. Frank, Esq. (Frank) to address disputes with egg

6

suppliers on two occasions.  See Docket No. 86, Document 3, Exhibit A (Certification of Alan L. Frank, Esq.).  First, Interlink retained Frank to represent it in a dispute and a related arbitration proceeding involving CWT Farms International, Inc. which lasted from July of 2008 to October of 2009.  Id.  Second, Interlink retained Frank to represent them in a dispute with Morris Hatchery, Inc. (Morris) which lasted from December of 2010 until the middle of 2012.  Id.  This second dispute is relevant to the current litigation.

Interlink's business relationship with Morris dates back at least to 2007.  On January 30, 2007, Interlink and Morris entered into an ExclusivityAgreement that prohibited Morris from selling broiler hatching eggs into Russia and the CIS Countries for an unlimited duration, subject to Interlink purchasing a minimum volume of broiler hatching eggs.  Docket No. 80 (Joint Final Pretrial Order), at 5-6.  On June 16, 2008, Interlink and Morris amended the Exclusivity Agreement in order to allow Morris to sell broiler hatching eggs to one company in the Ukraine.  Id. at 6.

Eventually, Morris filed an action for a declaratory judgment in the United States District Court for the Southern District of Florida (Florida Lawsuit) to determine that the Exclusivity Agreement, which was created to last for an indefinite period of time, expired as of December 31, 2010.  Id.  Interlink filed a counterclaim against Morris in the Florida lawsuit seeking monetary damages. Prior to the 2012 trial in the Florida Lawsuit, in March of 2012, Timokhine sent emails to both Karpman and Frank concerning Timokhine's understanding regarding the financial arrangement between the parties in connection with the Florida lawsuit.  Id.  Between April 1, 2012 and the trial of the Florida Lawsuit, Frank, and at least one other person from his law office, sent correspondence to both Karpman and Timokhine concerning the Florida Lawsuit, including correspondence relating to settlement communications and legal invoices.  Id.  In May 2012, a jury ruled in favor of Interlink's counterclaim, finding that Morris violated the Exclusivity Agreement, resulting in a $2,066,711.02 judgment, inclusive of interest, in favor of Interlink.  Id.  That judgment amount was

paid to Interlink, id., and Interlink paid a portion of the judgment, $780,504.76 to ATFC and Timokhine.  Docket No. 88 (Opposition Brief), at 2.

Timokhine and ATFC contend that there are two issues to which Frank's testimony would properly relate:  first, the issue regarding their alleged breach of fiduciary duty with respect to the handling of the non-compete agreement with Morris; and second, the issue regarding the purpose behind the payment by Interlink of a portion of the Florida Lawsuit proceeds to ATFC and Timokhine.  With respect to the first issue, Timokine and ATFC contend that as a direct actor/ participant concerning their actions as to the non-compete agreement, Frank would have pertinent information regarding the nature of those action.  As regards the second issue, Timokhine and ATFC claim that the payment of proceeds from the Florida Lawsuit was the share of profits of the joint enterprise to which he and ATFC were entitled pursuant to their long-standing arrangement with Interlink and Karpman, while Karpman and Interlink claim it was consideration for Timokhine's and ATFC's execution of the August 3, 2012 agreement not to compete with Interlink (which is mentioned earlier in this analysis).  Timokhine and ATFC claim that Frank, as Interlink's attorney at the time of the Florida Lawsuit and thereafter, has personal knowledge regarding the purpose behind this transaction, just as he has personal knowledge regarding the Morris non-compete agreement, and they insist that Frank can therefore be compelled to testify in their case in chief.

Interlink and Karpman counter inter alia that Frank does not have the unique or particularized knowledge which ATFC and Timokhine suggest he has concerning these two issues.  Moreover, Interlink and Karpman argue that to the extent that Frank may have relevant knowledge, that knowledge would be cumulative of the knowledge possessed by people already expected to testify at trial (and, presumably, the exhibits expected to be introduced) and therefore Frank should not be compelled to testify.  Perhaps most importantly, Interlink and Karpman argue that it would be extremely prejudicial to them if Frank were compelled to testify because this would likely result in the disqualification as trial counsel of their long-standing attorney of choice.  In this regard, Interlink

and Karpman suggest that the attempt by ATFC and Timokhine to force Frank to testify is really nothing more than "a naked trial tactic" to remove Frank from the case.

The determination regarding whether to exclude a witness or permit that witness to testify is generally within the sound discretion of the trial judge.  See Semper v. Santos, 845 F.2d 1233, 1238 (3d Cir. 1988) (such decisions reviewed only for abuse of discretion). In Meyers v. Pennypack Woods Home Ownership Association, 559 F.2d 894, 904-05 (3d Cir. 1977) (modified and/or supplemented by subsequent Court decisions), the Third Circuit Court of Appeals identified certain key factors for a court to consider when determining whether or not to permit a witness to testify. More recently, in Quinn v. Consolidated Freightways Corporation of Delaware, 283 F.3d 572, 576-77 (3d Cir. 2002), the Court went about succinctly summarizing these factors.  First, the Court stated that the substantive importance of the testimony to be excluded is a critical consideration regarding the possible exclusion of testimony.  The Court continued as follows:

> Along with the importance of the excluded testimony, the *Meyers* factors include (1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order.

Id. The Court has since opined that the importance of the testimony to be excluded is likely the most important factor in this analysis.  ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012).

A careful analysis of these factors reveals that some counsel in favor of permitting Timokhine and ATFC to call Frank as a witness at trial, while some counsel against it.  Most obviously, the first factor identified in Quinn, supra, insofar as it deals with the idea of unfair surprise, and the fourth factor identified in Quinn counsel in favor of permitting Frank to testify. These factors contemplate a situation in which a party fails to timely identify a potential witness for trial, and there is no contention here that Frank was not identified by Timokhine and ATFC as a

9

potential witness early in this litigation.[1]  Thus, Interlink and Karpman cannot now suggest that they have been unfairly surprised that Timokhine and ATFC are seeking to have Frank testify at trial. Moreover, Interlink and Karpman cannot credibly claim that Timokhine and ATFC have violated any Court order or rule of procedure with respect to timely identifying Frank as a witness.

The remaining Meyers factors, however, appear to counsel against permitting Timokhine and ATFC from calling Frank as a witness at trial.  The first factor identified in Quinn, supra, insofar as it deals with prejudice, certainly counsels against compelling Frank to testify.  Interlink and Karpman have argued that should Frank be compelled to testify, he would as a result be disqualified from representing them at the trial, an assessment with which Timokhine and ATFC apparently agree.[2] This would, Interlink and Karpman argue, result in extreme prejudice to them at trial in that it would deprive them of their long-standing counsel of choice at precisely the time they need him most, on the eve of trial.  Interlink and Karpman suggest they would have no way of preventing this prejudice should Frank be forced to testify, thereby implicating the second consideration identified in the Quinn decision.  Moreover, Interlink and Karpman posit, the disqualification of Frank as their trial counsel would interfere with the efficient trial of this case insofar as the trial would have to be delayed in order that they might secure and educate new trial counsel, thereby implicating thereby implicating the third consideration identified in the Quinn decision.

As for the key consideration regarding the overall importance of Frank's testimony, Interlink and Karpman argue that Frank has no information bearing on the inquiries regarding the Morris non-compete agreement or the purpose of their payment of the Florida Lawsuit proceeds to Timokhine

---

[1] Indeed, it might be suggested that the Meyers factors are only to be considered in situations where a witness has not been properly identified during discovery and an opposing party seeks to have the witness excluded for that reason.  While the Court recognizes that such a situation is the type of scenario primarily contemplated by Meyers and its progeny, it believes that any suggestion that this is the only situation to which the Meyers factors are to be applied would be too extreme.  Certainly, there are conceivably situations where witness testimony might be excluded solely for reasons not relating to timely identification, including inter alia because it is simply too prejudicial or unnecessarily cumulative.

[2] In fact, in their submissions to the Court, Timokhine and ATFC argue that other counsel have assisted in their representation in this matter and could adequately serve in Frank's stead.

and ATFC beyond that which might be gleaned through other witnesses and extant documentary evidence.  While Timokhine and ATFC suggest that Frank may provide insight into the reasons behind Timokhine's handling of the non-compete agreement or Karpman's making the subject payment to Timokhine and ATFC, Interlink and Karpman insist that any such information would merely be cumulative of what may be had through other witnesses, thus rendering Frank's testimony comparatively unimportant for the purposes of the parties' presentations at trial.

Based on the foregoing, the Court determines that, on balance, an analysis of these factors counsels in favor of barring Timokhine and ATFC from calling Frank as a witness in this case.  In the Court's estimation, the critical factors leading to this decision are the prejudice that Interlink and Karpman would suffer given the likelihood that their counsel would be disqualified if forced to testify at trial, the resultant delays in the trial that would attend the reshuffling of trial representatives, and the relative unimportance of Frank's proposed testimony.  It almost goes without saying that any party deprived of its counsel of choice at trial will suffer significant prejudice, and it is further clear that disqualification of Frank as trial counsel in this matter will significantly disrupt the orderly and efficient trial of this case.  As for the significance of Frank's anticipated testimony, the Court is persuaded that most of what Frank might say regarding the handling of the Morris non-compete agreement and the purpose underlying the payment of proceeds from the Florida Lawsuit to Timokhine and ATFC can be elicited from the testimony of the principals to the transaction, Timokhine and Karpman.  As Karpman's attorney during the critical time periods, most of Frank's knowledge would necessarily be derivative of that of Karpman, and much of it might further be privileged.  Moreover, with respect to dealings Frank alone might have had directly with Timokhine, Timokhine can certainly recount those interactions at trial.  The Court is simply unconvinced that Timokhine and Karpman cannot give a comprehensive presentation regarding the handling of the Morris non-compete agreement and the payment to Timokhine and ATFC of proceeds from the Florida Lawsuit, and the Court therefore concludes that Frank's proposed testimony would merely be

11

cumulative of that of the principals.  Accordingly, Frank will not be compelled to testify at trial in this matter.[3]

Witnesses Eugene Khavinson and Bud West  The final in limine motion before the Court is that of Timokhine and ATFC seeking the preclusion at trial of the testimony of Eugene Khavinson (Khavinson) and Bud West (West).  Docket No. 85.  There appears to be no dispute that Interlink and Karpman failed to specifically identify Khavinson and West as potential trial witnesses prior to the submission of the Joint Final Pretrial Order in this matter.  Based upon this failure by Interlink and Karpman to identify these witnesses earlier, Timokhine and ATFC now seek their exclusion at trial.

Khavinson is a lawyer for Interlink and Karpman.  Docket No. 87 (Opposition Brief), at 7.  Although he has never filed an appearance in the present matter, he has apparently participated in this litgation at various stages.  Id.  Interlink and Karpman have never specifically identified Khavinson as having any other particular role in this litigation besides co-counsel.  See generally Docket No. 87 (Opposition Brief).  Nevertheless, Interlink and Karpman now urge that Khavinson's testimony will be useful in explaining the drafting of the two exclusivity agreements that are issues in this litigation.  Id. at 7-8.

Bud West was an employee of Keith Smith during the time period that Timokhine had dealings with that company.  Id. at 2.  Interlink and Karpman state that West had multiple communications with Timokhine related to pertinent business activities during 2012.  Id. at 2-3.  Presumably, Interlink and Karpman believe that West has information that might serve to shed light upon the nature of the relationships between Timokhine and Keith Smith and between Interlink and Keith Smith during the time period after Interlink and Timokhine ceased their own professional relationship.  This would potentially bear upon Timokhine's and ATFC's claims that Interlink and

---

[3] While the Court appreciates that Timokhine's and ATFC's naming of Frank as a witness for trial is by no means a surprise to Interlink and Karpman, the Court remains concerned that the naming of the opposition's attorney as a potential witness, however timely, may simply be a trial tactic to secure the disqualification of that attorney.  See Optyl Eyewear v. Styles Company, Ltd. , 760 F.2d 1045, 1049-50 (9th Cir. 1985).

12

Karpman improperly interfered in any contractual relationship between Keith Smith and Timokhine/ATFC.

Relying on the Meyers factors identified supra, the Court first finds that Eugene Khavinson should not be permitted to testify at trial. Clearly, Timokhine and ATFC have been unfairly surprised by the naming of Khavinson at the eleventh hour, and this surprise might very well operate to their detriment to the extent that Khavinson offers testimony or evidence which Timokhine and ATFC were not afforded proper opportunity to probe during discovery. While the Court might provide Timokhine and ATFC with leave to conduct a last minute deposition of Khavinson, this is certainly not the same as being able to evaluate the matter from an early point in time with full notice that Khavinson may be a key witness at trial. There is also a distinct possibility that reopening discovery, even for a discrete deposition, may result in a disruption or postponement of the trial in this matter, which is currently scheduled to commence in just a few weeks.[4]

Interlink and Karpman argue that they have previously indicated during discovery that a corporate representative might testify at trial, and they suggest that this corporate representative will be Khavinson. A general designation of a corporate representative as a witness for trial is no substitute, however, for the specific designation of a witness by name. Also, Interlink's and Karpman's failure to timely identify Khavinson as a trial witness constitutes a breach of Court procedures – namely, the obligation to make timely Rule 26 disclosures – that militates against permitting Khavinson to testify at trial.

The Court also concludes that Khavinson's testimony is likely to be of limited value at trial because it will be cumulative of what other critical witnesses will have to say. Certainly, Timokhine and Karpman can and will testify regarding the particulars of the non-compete agreements that are at

---

[4] Relevantly, the Court would note that, due to scheduling difficulties and the general unavailability of key actors in this litigation, the parties were unable to schedule a de bene esse deposition of Interlink's and Karpman's expert in the six weeks preceding the currently scheduled August 4, 2014 trial date.

issue in this matter, and there is no indication that Khavinson has unique or broader information regarding these agreements than either Karpman or Timokhine.[5]  Moreover, the Court is not insensible of the basic unfairness it would be visiting upon Timokhine and ATFC if it were to allow Khavinson to testify, particularly given that the Court has precluded them from calling Frank as a witness.  Interlink and Karpman have objected vociferously to the naming of Frank as a witness, based largely upon his professed lack of relevant or non-cumulative information.  In this instance, however, Interlink and Karpman suggest that their other attorney, Khavinson, does in fact have unique and particularized knowledge and should be allowed to testify regarding certain dealings between the parties.  Simply put, Interlink and Karpman should not be allowed have it both ways, and fairness dictates that Khavinson be precluded as a witness in the same fashion that Frank has been.[6]

 With respect to Bud West, the Court, again relying on the <u>Meyers</u> factors, finds that West should also not be permitted to testify at trial.  As with Khavinson, West was not timely identified as a potential witness for trial and Timokhine and ATFC have arguably been prejudiced by his late identification.   Interlink and Karpman urge that West is well known to Timokhine and ATFC through discovery and otherwise and that his name should not now come as a surprise.  This may be true as a general proposition, but the fact that West's name was repeatedly omitted from Rule 26 disclosures and discovery responses, while the name of his Keith Smith compatriot, Eddy Slick (Slick), was always mentioned in those disclosures may very well have been interpreted by Timokhine and ATFC as an affirmative assertion by Interlink and Karpman that West was not a

---

[5] It should be mentioned that the Court perceives the central purpose behind the naming of Khavinson as a witness for trial is that he might testify as a lawyer regarding the propriety of the Morris non-compete agreement and Timokhine's actions relating thereto.  If this is so, Khavinson's testimony would very clearly constitute expert testimony for which he has never been properly designated or qualified as an expert, and this constitutes yet another reason for the Court to preclude him from testifying at trial.

[6] This basic unfairness the Court would visit upon Timokhine and ATFC were it to allow Khavinson to testify at trial is only exacerbated by the fact that Interlink and Karpman have long been aware that Timokhine and ATFC intended to call Frank as a witness at trial, and yet they never lifted a finger throughout discovery to identify his co-counsel as a potential trial witness.

potential witness for trial.  In addition, it would appear that whatever useful testimony Interlink and Karpman might elicit from West, they might also elicit that testimony from Slick, who (as the Court submissions establish) was almost always a party to contacts between West and Timokine. Consequently, it does not appear that West's testimony is of such consequence as to justify the Court's excusing his non-identification earlier in the litigation.  Accordingly, West will also be precluded from testifying at trial.[7]

THEREFORE, based upon the foregoing,

IT IS on this 18th day of July, 2014,

ORDERED that Anatoli Timokhine be permitted to testify as a lay witness as to the facts and opinions set forth in his October 21, 2013 report, and it is further

ORDERED that Timokine and ATFC are precluded from calling attorney Alan L. Frank, Esq. as a witness at trial, and it is further

ORDERED that Interlink and Karpman are precluded from calling Eugene Khavinson and Bud West as witnesses at trial; and it is further

ORDERED that the Clerk's Office is to terminate the motions at Docket Entry Nos. 63, 85 & 86.


_____s/James B. Clark, III_____
**HON. JAMES B. CLARK III**
**United States Magistrate Judge**

---

[7] The Court notes that Interlink and Karpman have also opposed Timokhine's and ATFC's motion by suggesting it is procedurally deficient insofar as it is supported by the Declaration of one of their attorneys.  Interestingly, Interlink and Karpman so argue despite the fact that they rely on a substantive Declaration of their own attorney, Frank, in support of their own motion in limine.  Docket No. 86, Document 3, Exhibit A.  The Court is not willing to reject Timokhine's and ATFC's motion on this ground advanced by Interlink and Karpman and observes that consideration of the Declaration may not even be absolutely necessary to its determination of the motion.  Even if consideration of the Declaration were necessary, however, the Declaration does not set forth facts that would be unknown to the other primary actors in this litigation (nor do the facts set forth therein appear to be disputed).  The Court is simply not interested in having Timokhine and ATFC resubmit the Declaration over another non-attorney's signature in order to fix an otherwise insignificant procedural irregularity.